Our fifth case for this morning is Milligan v. Rock on the River. Would it be possible for me to change my rebuttal to three minutes rather than five? Watch. And when it says three minutes, you can say you're waiting for rebuttal. Thank you. That would be fine. So you must be Mr. Shomish. I am. I'm sorry. All right. May I begin? Please. May it please the court, counsel. I'm John Shomish. I represent Joshua Milligan. If this decision is affirmed, it will raise the question of whether or not the Daubert standard even remains workable in non-scientific settings. Before you is a negligent security case. The negligence in this case is essentially whether the defendant, by setting the security table and supplying the utensils to the assailants, is a substantial factor in causing the beating and assault that Joshua Milligan sustained. Rock on the River occurred at a venue owned by one of the defendants and leased to another one of the defendants. It's essentially a 1,000-by-1,000-foot area. The campground is contiguous with the concert venue. Scott Sheckler testified that as long as people have a wristband, they can go back and forth between the campground and the concert venue at will. So, Mr. Shomish, let me explain at least as far as I can tell what seems to have bothered the district court judge at least. It's a big concert venue. The expert that you produced obviously has a lot of expertise in this area, but what the district judge couldn't find, and I'm frankly having trouble finding too, is specifics about what a reasonable concert presenter would have done, whether it's number of security officers or their placement or better screening at the perimeter or more careful monitoring of alcohol. I don't know. There's specifics. All we get is, with the exception of the number of security officers, and they seem to comply with that recommendation. They actually seem to comply with whatever he said about lighting too, but the district judge was saying you can't just say run a safe place. You have to say in what respects was this below what a reasonable company would offer. It's a terribly sad case, of course. Everybody understands that, but what did they do that was wrong? What did they do that was below standard of care? Well, Your Honor, the one that comes immediately to mind has to do with the lighting. But where does Mr. Collins, in any degree of specificity, indicate placement for lights? I mean, we've got all this stuff about foot candles, whether it's 20, whether it's two. He says at one point it should be 20, but then he changes his mind and says, well, maybe only seven, maybe something else. Well, Your Honor, I hate to say it, but I almost feel it's like a red herring. It's going to foreseeability. Mr. Collins said in his deposition in 275 to 278, which was cited in our district court brief at page seven, that lighting is the most common deterrent in the security business. Enough lighting is necessary for two purposes, one, because it acts as a deterrent, and two, because it allows the people that are at the concert venue to be able to look over here or look 100 feet that way and be able to see. And we know from this case and from the police photos that it was pitch black. This is almost a case where if we were in state court, which we're not, you probably might not need an expert, but we know federal law requires that we must have an expert. So he absolutely is critical regarding the lighting and regarding the placement of the security. It's not enough to have a number of security people. They have to be placed. And where did Mr. Collins bring this down to the ground? Where did he take his considerable expertise, apply it to rock on the river, and say this is where they fell short? I mean, obviously, well, I shouldn't say obviously. If it's just that this terrible assault happened and they didn't really do anything wrong, which is one of those things, that would be a standard of strict liability, and you're not correctly, you're not arguing for that. But a responsible concert presenter would want to know for the future, what is the standard of care? Well, the standard of care, I mean, you'd have to go through the methodology that he used. I did. I mean, I looked at it. Okay, so he went through all the materials. He used the ACES International Protection of Assets Manual and the International Association of Professional Security Consultants. I understand that. He studied all of these things. But where does he boil it down into this is where you fell short? I would say between pages 4 and 16 of his report. But I take it that you're not pursuing at the moment any theory, or you weren't, any theory that it was the alcohol sales. Your Honor, not with respect to what you would consider dram shop, but there is testimony that alcohol and liquor and beer sales was a major profit center at this event, and the person who ran the event testified that he was aware that people would be drunk. The police testified there was many drunk people by 10.30, and the person who ran the event also has a nursing degree and recognized that drunk people are more vulnerable and that some other drunk people are more aggressive, which sets up the situation where if you don't have lighting, where people congregate, which is what Mr. Collins said, that it invites a target of opportunity, if you will. No one is going to go in front, come out and say, I'm going to commit this crime. I did it, but on the other hand... No, but one thing, I'll just give you an example. One thing Mr. Collins, as far as I could tell, didn't say, maybe he meant not to say it. I could imagine if there's that much alcohol being sold, and it's that many people, even 2,000 and some people, not as many as they hoped, maybe you'd say you should always have supervision near the porta-potties. People are predictably going to be going back and forth there, but I don't see him saying that. Well, I believe he does say, and the deposition says, is that there were no security near the porta-potties in the campground because the concerts were going on. Before I said pages 4 to 22, I mean also 3 to 22, he outlined several areas where they were, Collins outlined several areas where they were deficient. Now, as far as the alcohol goes, that really goes to foreseeability, which would go to breach in Lees v. Carthage College, and this circuit talks about that. But, you know, just to go back to this bullet point list on page 3, I could see this as headings, and when I was looking at the report, I was looking for elaborations, but if you're just saying they failed to provide a safe environment for its guests, there's obviously a typo there, including Joshua Milligan, I don't learn anything about what they did wrong. Well, he says defendants committed the following negligent and reckless acts, but for them doing this, we're not here for this case. And, again, that to me goes to the breach, which is the standard. It doesn't go to the Daubert analysis, and to the extent that perhaps the district court felt that this wasn't as strong an argument as it could be, that would go to weight and not admissibility. I'm into my rebuttal time. You can save the rest. Mr. Sosnay. Good morning. May it please the court, Jacob Sosnay for the appellees Rock on the River, Inc., Country on the River, Inc., Scott and Jill Sheckler, and Sheckler Management, Inc. I want to start out briefly before I get into the majority of my argument by addressing one particular issue with respect to counsel's statement that the most important issue in this case was lighting. First of all, lighting has been dismissed as a claim in this case on the basis not that the expert's testimony was unreliable, but that they failed to produce evidence of causation, a separate element of the cause of action that was not appealed. I would also point out to the court that Mr. Collins testified at his deposition, this is from appendix page 135, page 249, lines 13 through 19 in his deposition. I asked him the question, are you qualified to opine to a reasonable degree of certainty what precise lighting was necessary outside of the porta potties where this incident occurred? Answer, yes, I am prepared to provide that information if I had conducted a security survey there. Russell Collins never did a lighting analysis. He was retained on June 29, 2017. He wrote a report that was filed with the court on July 7, 2017, eight days later. He had not been to the property at that point yet. It was not until August 29, almost two months later, that he went to the property and performed a site inspection during the day. He never saw the property at night and therefore could not, testified he could not, offer an opinion as to what the lighting standard of care would have been. Did he amend his report after the visit? He did not. And I asked him that. After your visit, have you changed your opinions in any way? And he said no. Did the scheduling order require the filing of the expert reports? Yes, it did. And in fact, the scheduling order also indicated that if there were going to be amendments, they had to be done no later than, and I forget the exact number, but it was a certain number of days after the inspection, or rather before the deposition. And that wasn't done in this case. The only issue before this court is whether or not Judge Peterson abused his discretion. An abuse of discretion occurs when a district court's decision is arbitrary, capricious, or whimsical. I've heard it described at times that if the district court's decision was simply crackers. The hallmark of an abuse of discretion review is considerable deference to the trial court. There has not been a showing to this court that Judge Peterson abused his discretion in this case. His criticisms of Russell Collins' opinions boil down to Russell Collins' failure to connect the facts and data of the case to the conclusions. There needs to be a reasoned analysis linking the experiential data to the conclusions reached, and that's what's missing here. As Judge Wood pointed out, the summary or the bullet points on page 3, those would be fine allegations in a complaint, but they are not opinions with respect to what the standard of care requires under a given circumstance. There were two opinions related to security that were appealed. They concern the number of security, which relates to this security ratio of 1 to 250. We had three times that amount. And then there's the opinion that security guards should have been at the particular location at the particular time, but there was no reasoned analysis demonstrating why that should have been. Russell Collins didn't cite any statistical data from prior events at this location. He didn't cite any statistical data regarding crimes in general. He didn't elaborate with respect to his prior experiential data at similar events and why it was necessary that court of parties should have a security presence at all times. It was based solely on his statement that I'm experienced, I reviewed a whole bunch of things, and this is my conclusion. He never tied those dots together. I mean, it does seem a bit common sense to think that at a large event, one of the places that you might want to keep an eye on people would be around the restroom facilities. Well, these were not the only restroom facilities, number one. There were restroom facilities throughout the entire venue. These were in a campground, which necessarily is going to be dark anyway. And the concert was going on at the time, which is what Judge Peterson identified. There was no accounting for any of that in Russell Collins' opinion at all. He could have provided a theoretical analysis. That's certainly possible. The Lees decision that was cited in all the briefs refers to the potential for a theoretical analysis on the record. But in the absence of an actual analysis, the mere possibility that it could have been done is insufficient, which is why in Lees, even though there were some certain recommendations that that expert had referred to, they were still properly excludable where there was no analytical link between the experiential data and the conclusions. Unless there are any other questions I would sum up with, because the district court did not abuse its discretion in excluding the opinions, this court should also affirm that decision and the decision on summary judgment. Thank you.  Thank you, Mr. Sesney. Anything further, Mr. Shelmush? Collins gave an eight-hour deposition in this case, supporting what his bases for his opinions were asked by the defense. Lees v. Carthage College, page 527, does not require expertise in lighting. In this case, Judge Peterson abused his discretion. In page 10 and 11 of his opinion, the district court comments on whether or not security should have known people in the campground might commit crimes. Page 11, he says, Collins does not say the assault occurred at a time when security staff would have any reason to believe there would be a significant number of people in the campground. The next sentence says, in fact, if one witness testified the concert was still going on or just had ended when the assault occurred. This isn't a symphony. People are going back and forth all the time. These statements go to foreseeability, which is a jury decision. The district court usurps the role of the jury and therefore abuses its discretion if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed. And that's from Smith v. Ford Motor Company, which was cited in this case. And I think that Lees v. Carthage College should control in this case. The decision should be reversed. There is a material dispute of fact, and as such, summary judgment is inappropriate, and the rest of the evidentiary issues can be taken care of by vigorous cross-examination and the litigation process. All right. Thank you. Thank you very much. Thanks to both counsel. We will take the case under advisement.